## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRANDON DORSEY**                                    **CIVIL ACTION**

**VERSUS**                                                 **NO.  15-5070**

**ROBERT C. TANNER, WARDEN**              **SECTION "J"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Brandon Dorsey, is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2]  On June 7, 2010, Dorsey and a co-defendant, Glenn

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 4.

Dickerson, were charged in a six count bill of information in Jefferson Parish.[3]  Dorsey

was charged in count one alone with fleeing from an officer and in count two as a felon

in possession of a firearm.  Dickerson was charged in count three as a felon in possession

of a firearm.  After amendment of the bill on December 8, 2010, both Dorsey and

Dickerson were charged in counts four, five and six with armed robbery.  The Louisiana

Fifth Circuit Court of Appeal summarized the facts determined at trial as follows:

> . . . On April 24, 2010, at approximately 1:00 a.m., Enola Jackson arrived home and parked in front of her house at 2905 Dove Avenue on the Westbank in Jefferson Parish, after which a dark-colored car pulled up behind her.  Two black males with guns approached her vehicle, one on each side, and told her to give them what she had.  When they subsequently asked for her purse, Ms. Jackson told them she did not have one.  Afterward, the males took her cell phone and an old radio and then left in their car.  She thought that there might have been a third person in the suspects' car because the car was running.
>
> Ms. Jackson called 911 and reported the incident.  She described one of the males as very dark-skinned with a low haircut, and the other male as being a lighter color with dreadlocks and a gold tooth in the top of his mouth.  Later that night, a police officer took her to a scene, where she identified Glenn Dickerson as the robber with the dreadlocks.  Her level of certainty of the identification was between "a seven and eight."  Ms. Jackson believed that defendant looked like the other robber, but she was not as sure of that identification as she was of her identification of Dickerson.
>
> On April 24, 2010, at approximately 1:30 a.m., Gregory Barbier pulled in his driveway at 1009 Curtis Drive in Harvey.  His girlfriend, Jena Moorman, and her 10-year-old son were in the truck with him.  Mr. Barbier exited the truck and walked to the front of it.  At that point, a black male put a gun in his face and said, "Give me my money."  When Mr. Barbier said he did not have any money, the robber said, "Give me my f . cking money."  Again Mr. Barbier said he did not have any money as he put his hands up and took a couple of steps backwards.
>
> At that point, he heard Ms. Moorman scream, and when he turned and looked, there were two other black males on the other side of the truck.  All three males were armed.  Mr. Barbier ran around to the back of the truck, and one of the

---

[3]St. Rec. Vol. 1 of 5, Bill of Information, 6/7/10 (see handwritten amendments dated 12/8/10); but see, Minute Entry, 12/7/10 (indicating amendments done that day).

males hit him in the back of the head and knocked him down.  As Mr. Barbier was standing up, he saw the three males run to their car, a black Ford Contour, and take off.  The robbers took Ms. Moorman's purse.  They also took a bag of clothes and a cosmetic bag Mr. Barbier had in his hand.

[. . .]

After the robberies, Officer Renoid Berthelot of the Jefferson Parish Sheriff's Office (JPSO) was advised to be on the lookout for a small four-door sedan occupied by three black males.  A vehicle matching that description with three black males was found at the Discount Zone gas station at 7340 Westbank Expressway parked in front of a gas pump.  The vehicle was occupied by two subjects, and there was a black male with long dreadlocks who was pumping gas at the vehicle.

A deputy parked behind the suspects' vehicle.  As soon as Officer Berthelot pulled up, the male pumping gas turned and took off running, leaving the pump in the gas tank of the car.  The suspects' vehicle immediately took off, ripping the gas pump nozzle out of the car.  The suspects led numerous police officers on a high-speed chase to St. Charles Parish, disregarding traffic signals and signs.  When they got to Interstate 310 onramp in Luling, the back seat passenger pointed a gun out of the back glass in Deputy Bobby McNulty's direction.  Deputy McNulty then rammed the back of the suspects' vehicle.  The front seat passenger passed a handgun to the back seat passenger, and the back seat passenger subsequently threw two guns out of the window, which caused sparks to fly as the guns hit the ground.

Afterward, the underside of the suspects' vehicle was engulfed in fire from the front tires to the back of the car.  The suspects' vehicle came to a stop, the doors opened, and the driver and passenger exited the vehicle.  They attempted to run; however, after a struggle, they were subdued and apprehended.  A semi-automatic handgun and a .357 revolver were recovered from Interstate 310 onramp.

State v. Dorsey, 94 So.3d 49, 52-55 (La. App. 5th Cir. 2012); State Record Volume 3 of

5, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-745 c/w 11-KA-955, pages

3-8, April 24, 2012.

The co-defendant Dickerson pled guilty to three counts of armed robbery under

a plea agreement and received a 25-year prison sentence.  Dorsey, 94 So.3d at 55.

Dorsey was tried before a jury on March 2 and 3, 2011, and found guilty as charged on

counts one (flight from an officer), two (felon in possession of a firearm) and four (Moorman armed robbery), and not guilty as to counts five and six.[4]  At a hearing on April 1, 2011, the state trial court denied Dorsey's motions for post-verdict judgment of acquittal and for new trial.[5]  After waiver of legal delays, the court sentenced Dorsey to concurrent terms of two (2) years at hard labor on count one, ten (10) years at hard labor on count two and thirty-five (35) years at hard labor on count four, with the sentences on counts two and four to be without benefit of parole, probation or suspension of sentence.[6]

The court later adjudicated Dorsey a third felony offender and resentenced him on the armed robbery count to serve sixty-seven (67) years at hard labor without benefit of probation or suspension of sentence.[7]  The court denied Dorsey's oral motion to reconsider the sentence.

On direct appeal to the Louisiana Fifth Circuit, Dorsey's appointed counsel asserted the following errors:[8] (1) The trial court erred in denying the motion for mistrial based on the mid-trial discovery that a potential juror was a close acquaintance of a

---

[4]St. Rec. Vol. 1 of 5, Trial Minutes (5 pages), 3/2/11; Trial Minutes (3 pages), 3/3/11; Jury Verdict, 3/3/11; St. Rec. Vol. 3 of 5, Trial Transcript, 3/2/11; Trial Transcript, 3/3/11.

[5]St. Rec. Vol. 1 of 5, Motion for Post-Verdict Judgment of Acquittal, 3/17/11; Motion for New Trial, 3/17/11; Minute Entry, 4/1/11; St. Rec. Vol. 3 of 5, Hearing Transcript, 4/1/11.

[6]St. Rec. Vol. 1 of 5, Sentencing Minutes, 4/1/11; St. Rec. Vol. 3 of 5, Hearing Transcript, p. 7-8, 4/1/11.

[7]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 6/27/11; St. Rec. Vol. 4 of 5, Hearing Transcript, 6/27/11.

[8]St. Rec. Vol. 3 of 5, Appeal Brief, 11-KA-0745 c/w 11-KA-0955, 10/25/11.

critical prosecution witness, a fact the potential juror communicated to other panel jurors before he was excused. (2) The trial court erred in prohibiting Dorsey from confronting and cross-examining a critical state witness regarding potential bias. (3) The trial court imposed an excessive multiple offender sentence. Dorsey was granted leave to file a pro se supplemental brief, but he failed to do so.[9] The Louisiana Fifth Circuit affirmed the convictions and sentences on April 24, 2012, finding no merit in the claims.[10] The court also addressed several errors patent which did not require remand, including notice to Dorsey of the delays for seeking post-conviction relief.

The Louisiana Supreme Court denied Dorsey's related writ application without stated reasons on October 12, 2012.[11] His conviction became final ninety (90) days later on January 10, 2013, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[9]St. Rec. Vol. 3 of 5, Motion for Leave, 11-KA-0745 c/w 11-KA-0955, 11/7/11; 5th Cir. Order, 11-KA-0745 c/w 11-KA-0955, 11/9/11.

[10]Dorsey, 94 So.3d at 49; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 11-KA-745 c/w 11-KA-955, 4/24/12.

[11]State v. Dorsey, 99 So.3d 39 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2012-KO-0998, 10/2/12; Request for Extension, 12-KO-998, 5/3/12 (dated 4/30/12); La. S. Ct. Letter, 2012-KO-0998, 5/3/12; La. S. Ct. Writ Application, 2012-KO-998 (undated).

About ten months later, on October 10, 2013, Dorsey signed and submitted an application for post-conviction relief to the state trial court in which he asserted three grounds for relief:[12] (1) He was denied a fair trial when his motion for mistrial based on lack of jury impartiality was denied and he was convicted. (2) The trial court erred by giving substantial weight to evidence of crimes for which petitioner was acquitted when giving reasons for the multiple offender sentence. (3) He was denied effective assistance of counsel during the multiple offender hearing when his counsel denied him confrontation rights and failed to object to the hearsay testimony of the latent fingerprint expert witness regarding the certifications of another analyst and failed properly to preserve the denial of confrontation rights issue for appeal.

On December 9, 2013, the state trial court denied relief, finding the review of the first claim procedurally barred under La. Code Crim. P. art. 930.4(A)[13] because it was addressed on direct appeal and review of the second claim procedurally barred under La. Code Crim. P. art. 930.3, State ex rel. Melinie v. State, 665 So. 2d 1172 (La. 1996) because it raised sentencing issues.[14]  After receiving additional briefing from the State on the third issue, on March 10, 2014, the court denied relief, finding that claim barred under La. Code Crim. P. art. 930.3 and Melinie as a sentencing issue and otherwise not

---

[12]St. Rec. Vol. 1 of 5, Application for Post-Conviction Relief, 10/22/13 (dated 10/10/13).

[13]The trial court cited La. Code Crim. P. art. 930.4(C) but quoted art. 930.4(A).

[14]St. Rec. Vol. 2 of 5, Trial Court Order, 12/9/13.

cognizable on post-conviction review under State v. Cotton, 25 So.3d 1030 (La. 2010).[15] Dorsey did not seek review of the March 10, 2014, ruling.

In the meantime, on January 6, 2014, Dorsey submitted an application for review to the Louisiana Fifth Circuit to place the court on notice of his intent to appeal the trial court's December 9, 2013, ruling and seeking an extension to file for review of the denial of relief on the first two post-conviction claims.[16]  On February 19, 2014, the Louisiana Fifth Circuit granted his request and allowed him 20 days to file his writ application.[17]

Twenty-two (22) days later, on March 13, 2014, Dorsey signed and submitted a writ application to the appellate court, arguing that the trial court erred in failing to consider his claim that he was denied a fair trial because of the juror partiality.[18] Although he mentioned review of the second issue related to his sentencing, he did not assert further argument.  Nevertheless, the Louisiana Fifth Circuit denied the writ application on April 3, 2014, finding no error in the trial court's December 9, 2013, ruling on both claims.[19]

About four months later, on August 5, 2014, Dorsey submitted a letter to the Louisiana Supreme Court asking for additional time to file a writ application for review

---

[15]St. Rec. Vol. 2 of 5, Trial Court Order, 3/10/14; State's Response, 1/8/14.

[16]St. Rec. Vol. 5 of 5, 5th Cir. Writ Application, 14-KH-37, 1/15/14 (dated 1/6/14).

[17]St. Rec. Vol. 5 of 5, 5th Cir. Order, 14-KH-37, 2/19/14.

[18]St. Rec. Vol. 5 of 5, 5th Cir. Writ Application, 14-KH-204, 3/22/14 (dated 3/13/14).

[19]St. Rec. Vol. 5 of 5, 5th Cir. Order, 14-KH-204, 4/3/14.

of the Louisiana Fifth Circuit's April 3, 2014, ruling.[20]  The supreme court's Central Staff Office sent Dorsey a letter on August 11, 2014, advising him that his pleading had been filed, and he was allowed sixty (60) days to file a supplemental writ application.[21]  The letter made clear that granting of the extension was not conclusive of whether his filings were considered timely or untimely.

Dorsey signed and submitted the supplemental writ application on October 9, 2014, asserting error in the lower courts' failure to address the merits of his claim that he was denied a fair trial based on the jury's lack of impartiality.[22]  The court denied the writ application on August 28, 2015, as repetitive, citing La. Code Crim. P. art. 930.4(A).[23]

## II.   FEDERAL HABEAS PETITION

On October 30, 2015, after correction of certain deficiencies, the clerk of this court filed Dorsey's federal habeas corpus petition in which he asserts the following grounds for relief:[24]  (1) He was unlawfully convicted when the state trial court allowed eleven

---

[20]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 14-KH-1700, 8/8/14 (dated 8/5/14); La. S. Ct. Letter, 2014-KH-1700, 8/11/14.

[21]St. Rec. Vol. 5 of 5, Letter from La. S. Ct. Central Staff, 2014-KH-1700, 8/11/14.

[22]St. Rec. Vol. 5 of 5, La. S. Ct. Supplemental Writ Application, 14-KH-1700, 10/15/14 (dated 10/9/14).

[23]State ex rel. Dorsey v. State, 175 So. 3d 399 (La. 2015); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2014-KH-1700, 8/28/15.

[24]Rec. Doc. No. 4.

jurors to deliberate without assessing their exposure to outside influences from a biased juror. (2) The state courts' denial of relief was contrary to or involved an unreasonable application of established federal law when they failed to evaluate juror bias. (3) The state trial court considered offenses for which he was acquitted when giving its reasons for sentencing.

The State filed a response in opposition to Dorsey's petition asserting that the federal petition was not timely filed and his claims in their current form were not exhausted in the state courts.[25]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore applies to Dorsey's petition, which, for reasons discussed below, is deemed filed in

---

[25]Rec. Doc. No. 11.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

federal court on September 25, 2015.[27]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Dorsey's federal petition was not timely filed and that he failed to exhaust state court review of his claims.  The State has not discussed procedural default.  For the following reasons, I find that the State's untimeliness defense must be rejected because it is partially erroneous and the case otherwise warrants equitable tolling.  In addition, the record reflects that, while he did not exhaust the sentencing issue, Dorsey has exhausted state court review of the impartial jury claim, and the State's argument to the contrary is erroneous.  In addition, as discussed below, the procedural bar imposed by La. Code Crim. P. art. 930.4(A) does not prevent this court from considering the merits of Dorsey's impartial jury claim.  In addition, because Dorsey is

---

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this court initially received and filed Dorsey's deficient petition on October 7, 2015, and it was later docketed on October 30, 2015, after correction of the deficiencies.  The case ultimately was opened on November 20, 2015, when the clerk received the filing fee from Dorsey.  Nevertheless, Dorsey dated the signature on his petition on September 25, 2015, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

not entitled to federal relief on the sentencing error claim, the court may address it without requiring further exhaustion.  28 U.S.C. § 2254(b)(2).

A.     LIMITATIONS DEFENSE MUST BE REJECTED

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[28]  Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  In my view, the State has not properly determined the date of finality of Dorsey's conviction in this case.

The record reflects that the Louisiana Fifth Circuit affirmed Dorsey's convictions and sentences on April 24, 2012.  The State argues that, following this ruling, Dorsey did not timely proceed to the Louisiana Supreme Court within the thirty (30) days allowed by La. S. Ct. Rule X§5, and the court did not acknowledge his efforts to obtain an extension.  If so, as the State argues, Dorsey's conviction would have become final on

---

[28]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

May 24, 2012, which was thirty (30) days after the Louisiana Fifth Circuit's ruling.  See

Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690,

694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely

proceed to the next available step in an appeal process)).  An untimely filing in the

Louisiana Supreme Court would not be part of a proper finality calculation or offer a

statutory tolling benefit.  Id.

However, six days after the appellate court ruled, on April 30, 2012, Dorsey

signed and submitted a written request for an extension of time to file a writ application

with the Louisiana Supreme Court.[29]  That court does not ordinarily grant extensions.

See Butler, 533 F.3d at 319 ("A Louisiana Supreme Court rule requires that an

'application seeking to review a judgment of the court of appeals,' must be filed within

thirty days; it specifies that '[n]o extension of time therefor will be granted.'  La. Sup.

Ct. R. X, § 5(a).  While another section of the Rule – Section 5(b) – allows the Supreme

Court to extend the time for filings . . . 'upon proper showing,' that applies to narrow

categories of applications . . . .").  However, a letter from the clerk of the Louisiana

Supreme Court dated May 3, 2012, reflects that Dorsey's pleading in fact was "received

and filed" and assigned a case number "on the Docket of this Court."[30]  Contrary to the

State's assertions, Dorsey's pleading was not ignored and instead was treated as a timely

---

[29]St. Rec. Vol. 5 of 5, Request for Extension, 12-KO-998, 5/3/12.

[30]St. Rec. Vol. 5 of 5, La. S. Ct. Letter, 2012-KO-998, 5/3/12.

filed writ application which he later supplemented with the "undated" pleading that is part of the record.[31]

Thus, Dorsey's conviction became final on January 10, 2013, which was ninety (90) days after the Louisiana Supreme Court denied the related writ application. Applying Section 2244 literally, Dorsey had one year from finality of his conviction, or until January 10, 2013, to file his federal habeas corpus petition, which he did not do. His petition would have to be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

---

[31]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 2012-KO-998 (undated).

Dorsey asserted that the Louisiana Fifth Circuit's failure to provide him with notice of its post-conviction ruling on April 3, 2014, gives good cause for this court to grant him equitable tolling. The State does not argue that Dorsey received the ruling any sooner. The State instead argues only that his untimely Louisiana Supreme Court writ application submitted in August 2014 resulted in no statutory tolling. The State does not comment on the fact that the Louisiana Supreme Court denied the writ application on procedural grounds as "repetitive" under La. Code Crim. P. art. 930.4(A) and did not merely summarily deny the petition as the State suggests.

The record appears to support a conclusion that the Louisiana Supreme Court did <u>not</u> consider the August 2014 filing untimely. Instead, the court considered the substance of the writ application filed within the time period it set and recognized to run from Dorsey's receipt of the appellate court's order. Thus, I find that, at a minimum, the court-created delay in providing him notice and the acceptance of his writ application as if timely filed led Dorsey to believe he was proceeding properly through the state courts. These are grounds equitably to toll the one-year statute of limitations period in Dorsey's favor. <u>See</u> <u>Holland v. Florida</u>, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); <u>Hardy v. Quarterman</u>, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling

was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

    In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain

15

language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Dorsey's case, the one-year AEDPA statute of limitations period began to run on January 10, 2013, the day after his conviction became final under federal law. The one-year period continued to run without interruption for 272 days until October 10, 2013, when Dorsey submitted an application for post-conviction relief to the state trial court. As the State concedes in its alternative calculation, the application tolled the running of the AEDPA one-year filing period while it remained pending through completion of properly filed review. When coupled with equitable tolling, his state court proceedings remained pending through August 28, 2015,[32] when the Louisiana Supreme Court denied the related writ application.

Dorsey signed and submitted his federal petition twenty-eight (28) days later, on September 25, 2015. Considering the statutory and equitable tolling discussed above, Dorsey allowed only three-hundred (300) days of the AEDPA one-year filing period to run before filing his federal petition. Under these circumstances, the State's limitation defense cannot be accepted, and Dorsey's federal petition should be considered timely filed in this court.

---

[32]I recognize that Dorsey was two days late in submitting his supplemental writ application to the Louisiana Fifth Circuit on March 13, 2014. However, his application for post-conviction relief was still pending in the state trial court on claim number three, for which relief was not denied until March 10, 2014. Dorsey had until April 9, 2014, to seek review of that order, which he did not do. Nevertheless, the overlap of these pending matters renders the two-day delay irrelevant to the tolling calculation.

18

B.   <u>EXHAUSTION DEFENSE</u>

The State contends that Dorsey failed to exhaust state court remedies as to his impartial jury claims because his Louisiana Supreme Court writ applications in which they were raised were not procedurally proper, negating his effort to exhaust.  The State further argues that Dorsey's sentencing error claim is not exhausted because it is not satisfactorily briefed to determine if the claim is the same as that asserted in the state courts.  For the reasons that follow, I disagree.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  <u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982)); <u>accord</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Nobles</u>, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims."  <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court."  <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  <u>O'Sullivan</u>

v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan, 533 U.S. at 167.  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."  Id. (citing Nobles, 127 F.3d at 420).

Dorsey's state appellate and post-conviction pleadings reflect that each of his arguments related to the impartial jury have been asserted and considered by the Louisiana courts.  In fact, several of his memoranda are virtually identical on the issue. The record is clear that Dorsey presented to the state courts all of his impartial jury arguments before this court.

In addition, as discussed above, Dorsey's Louisiana Supreme Court writ applications in 2012 and 2014, were properly filed in that court.  Thus, I cannot accept the State's exhaustion argument based on its conclusion that the writ applications were not properly filed.  I therefore find that Dorsey exhausted state court review of the impartial jury claims before this Court.

As for the sentencing error claim, the State in part is correct in concluding that the issue was not exhausted through the Louisiana Supreme Court, but for reasons other than those advanced by the State.  Construing the allegations made in the form federal petition and attached memorandum broadly, Dorsey makes the same arguments presented in his

state court application for post-conviction relief.  Dorsey has consistently argued that the state trial court erred in considering the criminal acts for which he was acquitted when imposing his multiple offender sentence.  He asserted the same claim in his application for post-conviction relief in the state trial court.  Although he did not fully brief the issue in the related writ application, the Louisiana Fifth Circuit specifically mentioned the issue in its ruling denying the application on April 3, 2014.  Dorsey did <u>not</u> assert the sentencing error issue to the Louisiana Supreme Court in his 2014 writ application.  Instead, he specifically limited review his arguments in that court to alleged jury partiality.  Thus, Dorsey did not complete exhaustion of the sentencing error issue.

Nevertheless, Dorsey is clearly not entitled to federal habeas relief on his sentencing error claim.  The court can and will dispose of the issue without requiring further exhaustion.  28 U.S.C. § 2254(b)(2).

C.   <u>PROCEDURAL BAR UNDER LA. CODE CRIM. P. ART. 930.4(A) DOES NOT BAR FEDERAL REVIEW</u>

Dorsey asserts that the state courts erred in refusing to consider his impartial jury arguments as repetitive of matters considered on appeal under La. Code Crim. P. art. 930.4(A), because his claims differed from and expanded the arguments made by his counsel on direct appeal.  The State did not discuss the procedural bar in its response.

Dorsey and his appointed appellate counsel argued to the state courts that he was denied a fair trial by the mid-trial discovery that a seated juror knew the victim and that the juror's disclosure of the information was presumptively prejudicial and tainted the

remaining jurors, something the state trial court failed to investigate. While his claims were addressed on direct appeal and found meritless in the Louisiana Fifth Circuit's reasoned opinion, his related post-conviction claims were denied pursuant to La. Code Crim. P. art. 930.4(A). This provision is an independent state court procedural basis for dismissal of the claims.

However, the bar under Article 930.4(A) only precludes Louisiana courts from review of post-conviction claims which were already "fully litigated" on direct appeal. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994). The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal. Id., at 1583. Thus, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the reasons and findings in the direct appeal proceeding where the claims were first litigated. Id. at 1582-83.

The Louisiana courts determined and the record demonstrates that Dorsey's claims were before the Louisiana Fifth Circuit on direct appeal (and the Louisiana Supreme Court thereafter) and Dorsey was not entitled to further review of the repetitive claims in his application for post-conviction review. The bar to review of the repetitive arguments does not prevent this federal habeas court from addressing Dorsey's impartial

jury claims in light of the rulings made on direct appeal.  This court, therefore, can and will address Dorsey's claims which were denied as meritless on direct appeal.

VI.   STANDARDS OF A MERITS REVIEW

A.   CLAIMS ADDRESSED ON THE MERITS BY THE STATE COURTS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

23

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

        "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme

Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

B.   <u>CLAIMS NOT ADDRESSED ON THE MERITS BY THE STATE COURTS</u>

The AEDPA's deferential standard of review under Section 2254(d) and <u>Williams</u>, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). As discussed above, Dorsey did not exhaust review of his sentencing error claim in the Louisiana state courts. With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. <u>Cullen v. Pinholster</u>, 563 U.S. 170, 185-86 (2011); <u>Henderson v. Cockrell</u>, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA de novo standards of review. <u>Id.</u> at 598 (citing <u>Jones v. Jones</u>, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits));

Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009).  Thus, I will also consider Dorsey's

claim de novo when necessary.

VII.    JURY IMPARTIALITY (CLAIM NOS. ONE AND TWO)

Dorsey asserts that he was denied a fair trial when a seated juror announced to the

other jurors that he knew the victim.  He argues that this was a presumptively prejudicial

situation and that the state trial court failed to investigate the impact this incident had on

the other jurors.  Dorsey contends that the state courts' denial of relief on the issue was

contrary to established federal law requiring the state trial court to evaluate the

prejudicial impact before allowing the case to proceed before the tainted jurors.

The record reflects that, following the victim's trial testimony, all jurors were sent

on break in the jury room.[33]  During that time, one juror mentioned aloud that he knew

one of the victims but did not tell the other jurors which victim.[34]  The juror also called

his wife on his cell phone from the jury room to confirm the victim's name, and the wife

had to call her daughter to find out.[35]  The juror then notified the bailiff of his discovery.

After a conference in chambers with the juror and counsel, the state trial court held

a hearing on the matter at which the juror testified about how he knew the victim.[36]  He

---

[33]St. Rec. Vol. 3 of 5, Trial Transcript, p. 80, 3/2/11.

[34]Id., at p. 82, 83.

[35]Id., at pp. 80, 82.

[36]Id., at pp. 80-81.

testified that the victim was a friend of his step-daughter and had been to his home the previous Christmas Day.[37]  The juror stated that he had not spoken to the victim about the armed robbery and had not been told anything about the robbery.[38]  The juror acknowledged that he made the call to his wife while he was in the room with the other jurors.[39]  He indicated that he told his wife he could not tell her why he was calling but that he needed to know the victim's last name.[40]

Dorsey's counsel moved for a mistrial based on the juror's disclosure to the other jurors that he knew the victim, which he argued was a discussion about the case in contravention of the court's instructions.[41]  He further argued that this relationship gave the victim "implied credibility," causing prejudice such that Dorsey would be denied a fair trial, which is a statutory ground for mistrial in Louisiana.[42]  The court denied the motion, finding that the disclosure itself did not prejudice the defendant.  The court instead excused the juror and replaced him with the first alternate.[43]  The court also reminded all jury members upon their return to the courtroom that they were not to

---

[37]Id., at 81.

[38]Id.

[39]Id., p. 82.

[40]Id.

[41]Id., at p. 84.

[42]Id., at p. 86.

[43]Id., at p. 87.

discuss any aspect of the trial during recesses and should advise the bailiff if they needed to speak with the court.

Dorsey's counsel reasserted these arguments, among others, in his motion for a new trial before by the state trial court on April 11, 2011.[44]  The motion was denied at the hearing.

Dorsey's appointed counsel argued on direct appeal to the Louisiana Fifth Circuit that the state trial court erred in denying the motion for mistrial, because the juror who knew the victim violated the trial court's instructions not to discuss the case with other jurors during recesses, and his statements and actions in front of the other jurors denied Dorsey a fair trial and tainted the jury.  Dorsey's counsel further argued that the taint and prejudice could be presumed from the fact that the jury, comprised of eleven of the original twelve and one alternate, acquitted Dorsey of the other armed robberies and found him guilty of the only armed robbery of the victim who was known by the excused juror.  Counsel argued that the guilty verdict was presumptively based on credibility attributed by the jury to that victim through her relationship with the excused juror.

The Louisiana Fifth Circuit found no abuse of discretion in the trial court's denial of the motion.  The court held that the situation did not present a mandatory reason to grant a mistrial under Louisiana law, especially since the excused juror and the victim had no close relationship.  The court noted that the excused juror's recognition of the

---

[44]St. Rec. Vol. 3 of 5, Hearing Transcript, 4/1/11.

victim was tentative in that he had to call his wife to find out the victim's last name. The court found that the juror's removal was sufficient to correct any perceived prejudice.

In his application for post-conviction relief, Dorsey reiterated the same arguments describing the jury room phone call as an "extraneous influence" and improper outside communication which created a presumption of prejudice. Dorsey also asserted that federal law dictated that the presumed prejudice required the state trial court to question each of the remaining jurors to determine the impact or influence the disclosure had on their ability to remain unbiased.

The state trial court denied relief, finding the claims repetitive of matters fully litigated on direct appeal. Dorsey repeated the same arguments in his writ applications to the Louisiana Fifth Circuit and the Louisiana Supreme Court, which also were denied under La. Code Crim. P. art. 930.4(A).

The Due Process Clause guarantees an accused the right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information. Morgan v. Illinois, 504 U.S. 719, 726-27 (1992); Patton v. Yount, 467 U.S. 1025, 1037 n.12 (1984). "[T]he Supreme Court has clearly established a constitutional rule forbidding a jury from being exposed to an external influence." Oliver v. Quarterman, 541 F.3d 329, 336 (5th Cir. 2008). The Court has long held that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and

invalidate the verdict, at least unless their harmlessness is made to appear." Mattox v.

United States, 146 U.S. 140, 150 (1892).  The Court later restated the rule and elaborated

on the presumption of prejudice arising from an outside influence:

> In a criminal case, any private communication, contact, or tampering
> directly or indirectly, with a juror during a trial about the matter pending
> before the jury is, for obvious reasons, deemed presumptively prejudicial,
> if not made in pursuance of known rules of the court and the instructions
> and directions of the court made during the trial, with full knowledge of the
> parties. The presumption is not conclusive, but the burden rests heavily
> upon the Government to establish, after notice to and hearing of the
> defendant, that such contact with the juror was harmless to the defendant.

Remmer v. United States, 347 U.S. 227, 229 (1954).

However, the Constitution does not require a new trial every time a juror has been

placed in a potentially compromising but harmless situation.  Smith v. Phillips, 455 U.S.

209, 217 (1982); United States v. Olano, 507 U.S. 725, 738-39 (1993).  Due process

requires the court to "determine the circumstances, the impact thereof upon the juror, and

whether or not it was prejudicial."  Remmer, 347 U.S. at 230.  When questionable contact

occurs, the trial judge should assess prejudicial impact by questioning the juror directly,

with counsel's participation and input.  Smith v. Phillips, 455 U.S. 209, 217 (1982).

"[T]he trial judge is in the best position to evaluate accurately the potential impact of the

complained-of outside influence" and that determination can be made without an

evidentiary hearing.  United States v. Ramos, 71 F.3d 1150, 1153-54 (5th Cir. 1995).

To prevail on a claim of denial of due process due to a contaminated jury panel,

the petitioner must prove prejudice by establishing the actual existence of an opinion that

will raise a presumption of partiality in the jurors' minds.  Murphy v. Florida, 421 U.S. 794, 800 (1975); Chavez v. Cockrell, 310 F.3d 805, 811 (5th Cir. 2002).  Whether a jury was impartial "is a question of federal law; whether a juror can in fact do that is a determination to which habeas courts owe special deference."  Patton, 467 U.S. at 1036-37 & n.12.  The effect of an outisde communication on a juror's impartiality also is a question of "historical fact," Rushen v. Spain, 464 U.S. 114, 120 (1983); Patton, 467 U.S. at 1036-37, and the state courts' determinations in that regard are entitled to a presumption of correctness, unless the petitioner "presents 'clear and convincing' evidence to the contrary."  Ward v. Stephens, 777 F.3d 250, 268 (5th Cir. 2015) (quoting Oliver, 541 F.3d at 342 and 28 U.S.C. § 2254(e)(1)).

In this case, the record reflects that the state trial court took the appropriate action required by Supreme Court law to address the excused juror's superficial relationship with the victim.  Consistently with Remmer and Smith, the court questioned the juror about the relationship and his telephone conversation with his wife and allowed counsel to question him as well.  Although the court found no prejudicial impact, the juror was excused and replaced by an alternate.  Dorsey does not challenge that action.

Instead, he asserts that the state court erred when it failed to investigate the influence of the excused juror's disclosure and conversation on the remaining jurors.  At least one federal court has recognized that Remmer and its progeny do not discuss or require that a presumption of prejudice extend to the entire jury when one juror is

exposed to a private communication, contact or tampering.  <u>Khek v. Foulk</u>, No. 14-cv-02936, 2016 WL 270948, at *14  (N.D. Cal. Jan. 22, 2016) (declining to extend the <u>Remmer</u> doctrine beyond the facts to which it was applied, citing <u>White</u>, 134 S. Ct. at 1706).  Thus, the state trial court's questioning of the excused juror satisfied <u>Remmer</u>.

Moreover, as recognized by the Fifth Circuit, there is a valid distinction to be drawn between jury panels tainted by outside influence, such as publicity or communication with third parties, and jury panels exposed to internal influences, such as when one or more of the jurors themselves have violated an instruction of the court or commented on the case.  <u>United States v. Webster</u>, 750 F.2d 307, 338 (5th Cir. 1984) (citing <u>United States v. Chiantese</u>, 582 F.2d 974, 978 (5th Cir. 1978)), <u>cert. denied</u>, 471 U.S. 1106 (1985).  In the latter situation, there is no presumption of prejudice and no requirement that the court investigate or hold a hearing.  The excused juror's violation of the court's instructions, <u>i.e.</u> making the telephone call from the jury room to his wife and/or his non-specific comment that he knew one of the victims, was not the kind of extrinsic or outside influence on the other jurors triggering <u>Remmer</u>'s presumption of prejudice.

Dorsey has not established that the excused juror's recognition of the victim and brief mention of this fact in the jury room created a prejudicial or compromising situation for the other jurors.  The state courts found and the record establishes that the excused juror only mentioned that he knew one of the victims and limited his telephone

conversation with his wife to discovery of that victim's last name.  The excused juror testified that he offered no information to the other jurors, had no further discussions, and did not know anything about the robbery.  As determined by the state trial court, even if the conversation was overheard, the excused juror did not disclose or discuss any case information with his wife over the phone, and the other jurors learned no information about the case or the defense.  Dorsey has not demonstrated that the remaining jurors were improperly influenced or tainted by the excused juror's realization or disclosure that he knew one of the victims.

Dorsey also has identified nothing that would establish that the excused juror had any influence over the other jurors or that his familiarity with the victim led to an undue attribution of credibility to her testimony or that otherwise influenced the verdict.  The excused juror testified that he did not speak to the other jurors directly about the victim.  There is no evidence that the excused juror offered an opinion about the woman or her credibility.  Dorsey's argument that his disclosure unduly influenced the other jurors is purely speculative, especially in light of the substantial other evidence of his guilt.

The factual findings by the state courts regarding juror impartiality are supported by the record and entitled to deference.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  Dorsey is not entitled to relief on this issue.

## VIII.   REASONS FOR SENTENCING (CLAIM NO. 3)

Dorsey alleges that the state trial court erred when it relied on the armed robbery counts for which he was acquitted while imposing the 67-year multiple offender prison sentence.  The record reflects that the state trial court made the following comment during its April 1, 2011, sentencing on the underlying convictions:[45]

> Let the record further reflect that Mr. Dorsey was found not guilty with respect to count five and count six.  The Court heard all of the evidence, and the Court believed that Mr. Dorsey was in fact guilty of those two counts as well.  However, that did not take any -- the Court did not take that into consideration in arriving at this verdict.

At the multiple offender hearing on June 27, 2011, the state trial court heard evidence of Dorsey's entire criminal history as was necessary to address the defense motion for the court to deviate from the multiple offender sentencing statute under State v. Dorthey, 623 So.2d 1276 (La. 1993).  In Dorthey, the Louisiana Supreme Court held that, if the state trial judge found that the punishment mandated by the multiple offender statute, La. Rev. Stat. § 15:529.1, "makes no measurable contribution to acceptable goals of punishment or that the sentence amounted to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive."  Dorthey, 623 So.2d at 1280-81.

---

[45]St. Rec. Vol. 3 of 5, Hearing Transcript, pp. 7-8, 4/1/11.

In presenting the reasons for denial of the motion, the state trial court made the following comment about Dorsey's case:[46]

> It is the Court's opinion that he was - - that the State did in fact prove that he was guilty of those other two counts of armed robbery. However, for whatever reason it was, the jury saw fit to find that he was not guilty.
>
> I think the jury, I believe they did not understand the instructions that they were given, because I believe the State proved its case beyond a reasonable doubt with respect to those other two counts.

Construed broadly, Dorsey's argument is that the state trial court erred under Louisiana sentencing laws in considering matters for which he was not convicted when imposing his sentence. As an initial matter, Dorsey's premise is incorrect. The record is clear that the comments made during the multiple offender sentencing were made with reference to the denial of the Dorthey motion, not as a reason for the sentence itself.

Moreover, to the extent Dorsey bases this claim on state law, he is not entitled to federal habeas relief. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also

---

[46] St. Rec. Vol. 4 of 5, Hearing Transcript, p. 25, 6/27/11.

Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). "Errors of state law and procedure . . . are not cognizable unless they result in the violation of a federal constitutional right." Lee v. Whitley, No. 93-03791, 1994 WL 395071, at *3 (5th Cir. June 28, 1994) (holding that judge's purported violation of state law in failing to inform the petitioner of his right against self-incrimination in the habitual offender proceeding was not cognizable in a federal habeas corpus proceeding); see also Payne v. Whitley, No. 94-30101, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995); Odom v. Wheat, No. 09-3028, 2009 WL 3199178, at *6 (E.D. La. Sept. 30, 2009) (order adopting report).

Even if Dorsey attempted to frame this claim in terms of federal constitutional law, it would have to be dismissed. A state's failure to follow its own sentencing procedures is not reviewable by a federal habeas corpus court. Joseph v. Butler, 838 F.2d 786, 789 n.2 (5th Cir. 1988); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987). A federal court's habeas review hinges upon whether a criminal proceeding violated a defendant's constitutional rights, such that the violation rendered the criminal proceeding fundamentally unfair under due process considerations. Lisenba v. People of the State of Cal., 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right). State sentencing enhancement proceedings, however, are not determinative of

guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications.  Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987).  With regard to sentencing schemes, "[t]he Due Process Clause does not, . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused."  Parke v. Raley, 506 U.S. 20, 32 (1992) (quoting Medina v. California, 505 U.S. 437, 451 (1992)).

Dorsey has identified no Supreme Court precedent, and my research has located none, that would prohibit a state trial court from offering its opinion of the evidence or defendant's guilt after trial or during a sentence enhancement proceeding.  Dorsey also has made no showing of prejudice or fundamental unfairness resulting from the comments by the state trial court at the multiple offender proceedings.  The Dorthey motion filed by Dorsey's counsel required the court to evaluate Dorsey's criminal history to determine a proper punishment range.  After reviewing the years of criminal behavior in Dorsey's extensive criminal history, the court denied the motion and imposed a sentence within the range allowed under Louisiana multiple offender laws.

Dorsey has not demonstrated that he was denied a constitutional right during the multiple offender proceeding based on the state trial court's comments.  He is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Dorsey's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[47]

New Orleans, Louisiana, this _____29th_____ day of June, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[47]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.